UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| V. | : | CRIM. NO.  19CR316 (SRU) |
| | : | |
| WILLIAMS S. PALMIERI | : | JULY 9, 2020 |

**DEFENDANT'S REPLY MEMORANDUM IN AID OF SENTENCING**

Noticeably absent from the Government's memorandum—and from this case as a whole—is any claim that Mr. Palmieri acted out of greed.  This is not a case involving a millionaire "many times over" who constructs a scheme to avoid reporting income and uses hundreds of thousands of dollars to buy investment properties in Florida.  *See United States v. Raymond George,* 3:19-cr-00130 (SRU) (defendant convicted of felony tax evasion and sentenced to 9 months incarceration, followed by 1 year of supervised release).[1]

This is a case involving an otherwise law-abiding and decent man who procrastinated and deferred filing and paying his taxes when due, and then became overwhelmed by a serious health event, experienced heartbreaking personal problems within his family, and made poor financial choices.  He quickly found himself in a situation where he was living beyond his means and he created a tax problem more extensive and problematic than he had ever anticipated.  These are the circumstances surrounding the tax crimes that now bring Mr. Palmieri before the Court.

---

[1] The Government's sentencing memorandum in *George* described the defendant as "a multi-millionaire with an investment portfolio worth over $3 million, real estate holdings and rental properties worth over $1.7 million, and a business valued at over half a million dollars, willfully failed to report income totaling in $638,173, resulting in a tax loss of $220,663."  *United States v. George*, 3:19-cr-00130 (SRU), Gov't Sent. Memo, ECF No. 20 at 1.

The Government's memorandum also does not discuss certain other aspects of Mr. Palmieri's case that merit consideration by the Court.

*First*, the Government says practically nothing about Mr. Palmieri's acceptance of responsibility and contrition, as demonstrated by his decision to waive indictment, voluntarily plead guilty, stipulate to the tax loss calculations, and agree to pay substantial restitution that includes $86,234.47 in interest and penalties for years outside the tax years that underlie the offense of conviction.  Moreover, prior to pleading guilty, he sought the professional assistance of attorneys and accountants to bring his tax filings current, and he paid his taxes for 2018.  He deserves credit for taking these substantial steps, and for finally confronting his tax issues now, in such a public way.

*Second*, the conviction in this case is for a tax misdemeanor, not a tax felony, and there are no allegations that the offense involved fraud, underreporting of income, or false statements.  This makes Mr. Palmieri's case different from the many tax cases that come before the Court.  Although the Government accuses Mr. Palmieri of making it more difficult to collect the tax due, and this explains why Mr. Palmieri became the focus of a criminal investigation, the issues raised by the Government should not distract the Court from the fact that the specific offense of conviction is a failure to pay taxes, and not some other felony offense.[2]

---

[2] Mr. Palmieri previously responded to most of these allegations in his version of the offense, set forth in the PSR, and we will not repeat each and every one of those responses here.  *See* PSR ¶19.  As noted therein, however, he maintains that he did not use his IOLTA "to shield funds from IRS collection activity," Gov't Mem. at 4, or use "his children's bank accounts to park monies beyond the reach of the IRS," Gov't Mem. at 8.  Indeed, as noted in the PSR, **he actually paid the IRS using checks written off of the savings accounts**, conduct that is inconsistent with the Government's claim that Mr. Palmieri was attempting to hinder collection efforts.  *See* PSR ¶19 (in July 2016, Mr. Palmieri paid the U.S. Treasury $19,000 using two checks from his son's Liberty Bank savings account).

*Third*, the Government completely ignores the fact that a non-incarceration sentence—which substitutes home confinement for prison—is consistent with the sentences imposed in other tax cases in this District, and nationally, as discussed in Mr. Palmieri's original memorandum.  *See* Def.'s Mem. at 20-23.  There would be no unwarranted disparity created by imposition of a non-incarceration sentence in this case.  And here, there are aspects of Mr. Palmieri's personal situation that would make it appropriate to substitute home confinement for prison, including his unique role in caring for his children, his serious health issues, and the need for him to continue working to support his children and pay his ongoing tax obligations to the IRS.

*Fourth*, the Government does not mention that Mr. Palmieri still faces state and federal attorney disciplinary proceedings based on his plea.  These will result in additional collateral consequences for his financially irresponsible conduct.  If a sentence of incarceration is imposed, however, the collateral consequences will be devastating.  Such a sentence will guarantee that Mr. Palmieri will be suspended from practicing law, and it will delay his ability to reapply for admission by a period of years, by which time he will be in his early sixties and it may be too late to come back.  Pleading guilty to two misdemeanor tax offenses that do not involve fraud, deceit, theft, misappropriation, or false statements, should not result in the end of someone's entire career.  Such punishment is greater than necessary under 18 U.S.C. §3553(a).

*Fifth*, the Government unfairly minimizes Mr. Palmieri's efforts to save his house from foreclosure and preserve this substantial asset for tax restitution.  *See* Gov't. Mem. at 11.  Contrary to the Government's characterization, Mr. Palmieri did not simply do this to keep an "expensive house" with little regard for his taxes.  Over the past 22

months, since the foreclosure action was first filed, Mr. Palmieri has struggled to put a forbearance agreement in place and get the property into his name, so that the IRS can have security for his tax debt.  This involved saving and paying approximately $77,000 to the mortgage servicer to preserve equity that is currently between $250,000 and $300,000, and it also involved a written modification agreement with his ex-partner, so that the quit claim transferring the property could finally be filed.  The alternative was to give up, let the case run its course, go to jail, lose the house, and never be able to pay the IRS.  The fact that Mr. Palmieri has chosen—and has partially succeeded—in reaching his goal of resolving his tax debt using the house is thus worthy of serious sentencing consideration.  It is not, as the Government suggests, just more of the same. Indeed, Mr. Palmieri's plan to use the house to resolve his tax debt was something raised with the Government prior to his plea, and he has made significant progress.  He may yet have to sell the house, but that was something that was not possible while title to the property still rested with his ex-partner (conditionally, under the family court agreement).

*Sixth*, while deterrence is a relevant sentencing consideration, the Government's argument goes too far when it suggests that every tax case should result in some incarceration.  *See* Gov't Mem. at 8-10.  As in every case, there must be room to impose more individualized justice, based on the unique circumstances of the case; and this is even more true in cases that involve non-violent offenses where the defendant is not a danger to the community.

Finally, the Government has included a reference to the recent efforts of Mr. Palmieri's former partner to contact the Government and inject herself into this

proceeding under the guise of wanting to correct "what she deems to be falsehoods." Gov't Mem. at 3. Her statements, conveyed in a phone interview earlier this week, have not been corroborated. Even though the Government does not explicitly endorse the characterization of Mr. Palmieri by his ex-partner, its assertion that her version "presents a starkly different picture of family life than the version presented by the defendant," Gov't Mem. at 3, risks tainting Mr. Palmieri's credibility in the eyes of the Court, which we cannot leave unanswered. Even if it was not intended that way, it suggests that Mr. Palmieri has not been candid, and it is has the potential to color the Court's perception of the truthful information that he provided about his personal history and characteristics, which are significant factors to be considered under federal sentencing law.

Information contained in the PSR and letters submitted to the Court already corroborate the damaged relationship between the children and their mother, which is not the result of actions taken by Mr. Palmieri. *See*, *e.g.*, PSR ¶48. While Mr. Palmieri does not intend to re-litigate the family court issues, he will be submitting a short letter to the Court (transmitted through the U.S. Probation Officer) refuting the specious claim by his ex-partner of "alleged falsehoods" in his sentencing memorandum. What Mr. Palmieri has laid bare before the Court as part of his plea for mercy, is, sadly, the truth. If the Court requires more information or corroboration from him after reviewing his response, he will provide it.

## Conclusion

Mr. Palmieri respectfully requests that the Court consider all of the unique facts and circumstances of this case—including his personal background, his financial

circumstances, the nature of his offense, his efforts to secure payment of restitution, his unique family circumstances, his health, and the impact of the sentence on his career and ability to continue working as a lawyer—and impose a non-Guidelines sentence of probation, with stringent conditions, including home confinement, an order of restitution, and a reasonable fine.

Respectfully submitted,

*/s/ Robert M. Frost, Jr.*
Robert M. Frost, Jr. (ct 19771)

   FROST BUSSERT, LLC
   350 Orange Street, Suite 100
   New Haven, CT 06511
   Tel:     (203) 495-9790
   Fax:    (203) 495-9795
   Email:  rmf@frostbussert.com

ATTORNEY FOR DEFENDANT

**CERTIFICATION**

    I hereby certify that on this date a copy of the foregoing pleading was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

    Dated at Guilford, Connecticut on this 9th day of July, 2020.

                                                          */s/ Robert M. Frost, Jr.*
                                                          Robert M. Frost, Jr.